IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ASOCIACIÓN DE DETALLISTAS DE GASOLINA DE PUERTO RICO, INC., et al, <br><br> **Plaintiffs**, <br><br> v. <br><br> COMMONWEALTH OF PUERTO RICO, et al, <br><br> **Defendants**. | Civil No. 23-1175 (RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court is Defendants the Commonwealth of Puerto Rico; Hon. Pedro Pierluisi Urrutia in his official capacity as Governor; Hon. Domingo Emanuelli-Hernández in his official capacity as the Secretary of Justice; and Hon. Lisoanette M. González Ruiz's in her official capacity as the Secretary of the Department of Consumer Affairs ("DACO" by its Spanish acronym) (collectively, "Defendants") *Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(B)(6)* ("*Motion to Dismiss*" or "*Motion*"). (Docket No. 13). For the reasons set forth below, Defendants' *Motion* is **GRANTED**.

I. BACKGROUND

Plaintiffs are the Puerto Rico Gasoline Retailers Association, Inc. ("PRGRA" by its Spanish acronym) and 19 local

gasoline service station owners and operators.[1] (Docket No. 1). On April 11, 2023, they filed a complaint seeking a preliminary and permanent injunction to prevent Defendants from enforcing Puerto Rico Law No. 150-2008 as amended by Law No. 152-2013 (henceforth, "Law 150"), and declaratory judgment establishing Plaintiffs' right to offer discounts to customers paying in cash. Id. Law 150 prohibits retailers from offering such discounts. (Docket No. 9-5 (certified translation of Gasoline Retailers Assoc. of Puerto Rico, Inc. v. Commonwealth of Puerto Rico, 2016 WL 6471328, at *5-6 (P.R. Cir. 2016))). Plaintiffs argue that the Cash Discount Act, Pub. L. No. 97–25, § 201, 95 Stat. 144 (1981) (henceforth, the "CDA") and the Durbin Amendment to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1075, 124 Stat. 1376 (2010) recognize the right of a retailer to offer discounts to customers paying in cash and thus preempt Law 150. (Docket No. 1).

Defendants filed the present *Motion to Dismiss* on June 16, 2023. (Docket No. 13). They argue that the CDA and Durbin Amendment do not preempt Law 150 because they regulate the

---

[1] The plaintiff gas station owners and operators are A&E Service Station, Inc.; Antonio A. Juan León; Bajuras Development, Inc; Sami Davis Suleiman Abdelmajed; Q&P Fuel Management, LLC; Mega Puma 129, Inc.; Mega JL, Inc.; L&F Service Station, Inc.; José J. Arroyo Novoa D/B/A Garage Arroyo; WCL Corporation; Maracaibo Petroleum, Corp.; Orlando González Hernández D/B/A Raholisa Service Station; Matilde Collazo Viera D/B/A Green Valley Service Station; José A. Colón Alonso D/B/A Mobil Orocovis, Shell Utuado And Gulf Utuado; Janet Torres D/B/A Gulf Aibonito; Luis C. Crespo Ortiz D/B/A Apolo Texaco; Cooperativa Gasolinera Y Servicios Buena Vista; Once11 Corp.; and R2 Business, Inc. (Docket No. 1).

relationship between card issuers and retailers, not the relationship between retailers and consumers. Id. On July 5, 2023, Plaintiffs filed their opposition. (Docket No. 15). Defendants replied on August 11, 2023 and Plaintiffs sur-replied on September 5, 2023. (Docket Nos. 19 and 24).

## II. APPLICABLE LAW

### A. Fed R. Civ. P. 12(b)(6) Standard

When ruling on a Fed. R. Civ. P. 12(b)(6) motion, "[t]he sole inquiry ... is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Then, the Court takes "the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id. (citations omitted).

**B.   Preemption**

The Supremacy Clause of the United States Constitution states that:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. By virtue of this clause, "the Constitution provides Congress with the power to pre-empt state law." Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 368 (1986). However, "[f]ederal law is presumed not to have preemptive effect, and that presumption is overcome 'only in the face of clear and contrary congressional intent.'" Siembra Finca Carmen, LLC. v. Sec'y of Dep't of Agric. of Puerto Rico, 437 F. Supp. 3d 119, 127 (D.P.R. 2020) (quoting Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012)). *See also* Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142 (1963).

Congress may indicate its intent to preempt state law or regulations "through a statute's express language or through its structure and purpose." Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008) (citation omitted). Accordingly, a federal statute can preempt state law in one of three ways: (1) express preemption, whereby "congressional intent to preempt state law is made

explicit in the language of a federal statute"; (2) field preemption, when "federal regulation in a legislative field is so pervasive that congressional intent allows no inference that it left room for the states to supplement it"; or (3) conflict preemption, which may arise "when it is impossible to comply with both federal and state law" or "when state law stands as an obstacle to achieving the objectives of the federal law." In re Allied Fin., Inc., 572 B.R. 45, 52-53 (Bankr. D.P.R. 2017) (citations omitted). *See also* Siembra Finca Carmen, LLC., 437 F. Supp. 3d at 127-28. Plaintiffs bear the burden of establishing preemption. Capron v. Off. of Att'y Gen. of Massachusetts, 944 F.3d 9, 21 (1st Cir. 2019) (citation omitted).

The presumption against preemption "applies with particular force when Congress has legislated in a field traditionally occupied by the States." Altria Grp., Inc., 555 U.S. at 77 (citations omitted). *See also* Gen. Motors Corp. v. Abrams, 897 F.2d 34, 41-42 (2d Cir. 1990) (citations omitted) ("Because consumer protection law is a field traditionally regulated by the states, compelling evidence of an intention to preempt is required in this area.").

C. **Federal Landscape**

The first federal law that Plaintiffs argue preempts Law 150 is the CDA, which amended the Truth in Lending Act ("TILA"), 82 Stat. 146, as amended, 15 U.S.C. § 1601 *et seq.* In the early 1970s,

credit card companies included clauses in their retail contracts that forbade the retailers from charging different prices for cash and credit transactions. (Docket No. 15 at 2-3). Thus, in 1974, Congress amended the TILA to provide that "**card issuer[s] may not, by contract or otherwise, prohibit any [seller other than the card issuer] from offering a discount to a cardholder to induce the cardholder to pay by cash, check, or similar means rather than use a credit card.**" Fair Credit Billing Act, Pub. L. No. 93-495, tit. III, § 306, 88 Stat. 1500, 1515 (1974) (codified at 15 U.S.C. § 1666f(a)) (emphasis added). In 1976, Congress amended the TILA again, this time to prohibit sellers from "impos[ing] a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means." Pub. L. No. 94-222, § 3, 90 Stat. 197 (1976). Congress renewed the surcharge ban in 1978 and again through the Cash Discount Act of 1981. *See* Financial Institutions Regulatory & Interest Rate Control Act, Pub. L. 95-630, § 1501, 92 Stat. 3641, 3713 (1978); Cash Discount Act, Pub. L. No. 97-25, § 201, 95 Stat. 144 (1981). It finally let the surcharge ban expire in 1984, but **the provision barring card issuers from prohibiting cash discounts remains**. *See* 15 U.S.C. § 1666f(a).

The other federal law Plaintiffs allege preempts Law 150 is the Durbin Amendment in Dodd-Frank. The Durbin Amendment, which modified the Electronic Fund Transfer Act (EFTA) (15 U.S.C. 1693

*et seq.*), was intended to reign in the excessive interchange fees (or "swipe fees") debit card network operators imposed directly on merchants and indirectly on consumers. *See* <u>NACS v. Bd. of Governors of Fed. Rsrv. Sys.</u>, 746 F.3d 474, 479-80 (D.C. Cir. 2014). Plaintiffs argue that the following language added to the EFTA through the Durbin Amendment preempts Law 150:

> (A) IN GENERAL.—A **payment card network shall not**, directly or through any agent, processor, or licensed member of the network, by contract, requirement, condition, penalty, or otherwise, **inhibit the ability of any person to provide a discount or in-kind incentive for payment by the use of cash**, checks, debit cards, or credit cards . . .
>
> . . .
>
> (B) LAWFUL DISCOUNTS.—For purposes of this paragraph, the **network may not penalize any person for the providing of a discount** that is in compliance with Federal law and applicable State law.

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1075, 124 Stat. 1376 (2010) (emphasis added).

D. **Law 150**

In 2008, the Puerto Rico Legislature enacted Law No. 150-2008. In relevant part, it provides:

> Article 1.- No **merchant may impose a surcharge on a consumer who chooses to use a credit card instead of cash**, check or any other similar payment method in any transaction that involves the sale or lease of goods and services.

>   Article 2.- **The <u>merchant</u> may, however, offer discounts for the purpose of promoting the payment in cash,** check or any other similar payment method that does not involve the use of a credit card, provided that said discount is offered to any potential buyer.

(Docket No. 9-1 (certified translation of Law No. 150-2008)) (emphases added). Article 1 is a prohibition on credit card surcharges and Article 2 recognizes merchants' right to provide discounts to customers paying in cash. Id.

In 2013, Law No. 152-2013 amended Law No. 150-2008 by striking Article 2, thus "eliminat[ing] the commercial power to offer discounts for transactions made in cash[.]" (Docket No. 9-5 at 3 (certified translation of <u>Gasoline Retailers Assoc. of Puerto Rico, Inc.</u>, 2016 WL 6471328, at *5)).

### III. DISCUSSION

Plaintiffs do not allege that the CDA or Durbin Amendment expressly preempt Law 150, nor is the Court aware of any express preemption provision in either federal statute. Plaintiffs do not argue field preemption either, which is foreclosed by the anti-preemption clauses in the EFTA and TILA.

The EFTA's primary objective is to protect "individual consumer rights." 15 U.S.C. §1693. Its anti-preemption clause provides that state laws enacting greater consumer protections are not preempted:

>   This subchapter does not annul, alter, or affect the laws of any State relating to

> electronic fund transfers, dormancy fees, inactivity charges or fees, service fees, or expiration dates of gift certificates, store gift cards, or general-use prepaid cards, except to the extent that those laws are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency. **A State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection afforded by this subchapter.**

15 U.S.C. § 1693q (emphasis added). *See also* <u>Bank of Am. v. City & Cnty. of San Francisco</u>, 309 F.3d 551, 565 (9th Cir. 2002). Law 150 was enacted "so that each commercial transaction is carried out with the utmost confidence and in the fairest manner possible for the consumer." (Docket No. 9-3 at 1 (certified translation of Law 152-2013, Statement of Purpose)). Thus it is within the EFTA's anti-preemption clause's aegis. The fact that Law 150 is a consumer protection law also means that the presumption against preemption "applies with particular force[,]" <u>Altria Grp., Inc.</u>, 555 U.S. at 77, and that "compelling evidence of an intention to preempt is required[,]" <u>Gen. Motors Corp.</u>, 897 F.2d at 41–42.

Though the TILA's anti-preemption provision addresses "[s]tate credit charge statutes[,]" it too evinces that Congress did not intend to preempt the field:

> Except as provided in section 1639 of this title, this subchapter does not otherwise annul, alter or affect in any manner the meaning, scope or applicability of the laws of any State, including, but not limited to, laws relating to the types, amounts or rates of charges, or any element or elements of

> charges, permissible under such laws in connection with the extension or use of credit, nor does this subchapter extend the applicability of those laws to any class of persons or transactions to which they would not otherwise apply.

15 U.S.C. § 1610(b). *See also* Texaco, Inc. v. Hughes, 572 F. Supp. 1, 7 (D. Md. 1982) ("'[t]he Congress clearly did not preempt the field' in enacting the TILA, as 'the substantive law of the state is preserved intact.'" (quoting Mason v. Gen. Fin. of Virginia, 542 F.2d 1226 (4th Cir. 1976))). Therefore, as Plaintiffs seem to recognize, only conflict preemption could possibly apply.

Based on the CDA's plain language, there is no conflict preemption between it and Law 150. *See* Textron Inc. v. Comm'r, 336 F.3d 26, 31 (1st Cir. 2003) ("The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written."). The cash discount provision of the TILA states that **card issuers** may not bar sellers from offering cash discounts to customers. Fair Credit Billing Act, Pub. L. No. 93-495, tit. III, § 306, 88 Stat. 1500, 1515 (1974) (codified at 15 U.S.C. § 1666f(a)). It is a prohibition directed at card issuers, not at states. Nor does its terms suggest sellers have an absolute right to offer cash discounts.

Moreover, while the CDA provides that its purpose is to "encourage cash discounts[,]" the Court notes that purpose statements "'**cannot override [a statute's] operative language.**'" Sturgeon v. Frost, 139 S. Ct. 1066, 1086 (2019) (emphasis added) (quoting Antonin Scalia & Brian Garner, *Reading Law: The Interpretation of Legal Texts*, 220 (2012)). The operative language does not support Plaintiffs' theory that the CDA confers on sellers an absolute right to provide cash discounts thereby preempting Law 150. Law 150 does not stand as an obstacle to the CDA's objective of regulating card issuers, and compliance with both laws is possible. *See* In re Allied Fin., Inc., 572 B.R. at 52-53. Thus, there is no conflict preemption between the two.

The relevant provisions of the Durbin Amendment are also directed at payment card networks. Per the Amendment, **payment card networks** may not prevent anyone from offering discounts for using a particular payment method or penalize anyone for providing a discount that complies with federal and state law. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1075, 124 Stat. 1376 (2010). The Amendment's plain language does not prohibit states from doing the same or confer on sellers an absolute right to offer cash discounts.

"Preemption is strong medicine, not casually to be dispensed." Grant's Dairy—Maine, LLC v. Comm'r of Maine Dept. of Agric., Food & Rural Res., 232 F.3d 8, 18 (1st Cir. 2000) (citation

omitted). In this case, neither the plain meaning nor the objective of either the CDA or Durbin Amendment supports Plaintiffs' theory of conflict preemption as to Law 150. The relevant provisions of these two federal statutes exclusively regulate credit and debit card companies. They do not limit states or territories' power to regulate retailers, nor do they confer upon retailers an absolute right to provide cash discounts.

The Court does not address Plaintiffs' argument raised for the first time in its opposition to Defendants' *Motion to Dismiss* that Law 150 is unconstitutionally vague. A plaintiff may not amend their complaint through their opposition to a motion to dismiss. Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec., 980 F.3d 109, 117 n.5 (D.C. Cir. 2020) (citation omitted). Plaintiffs' complaint does not allege that Law 150 is unconstitutionally vague. All requests for relief therein are premised on preemption. (Docket No. 1). The factual allegations focus on the federal laws that allegedly preempt Law 150. Id. The single sentence that Plaintiffs argue alleges unconstitutional vagueness under the Fourteenth Amendment's Due Process Clause does not. (Docket No. 24 at 4-5 (citing Docket No. 1 ¶ 41)).

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' *Motion to Dismiss* at Docket No. 13. Judgment of **DISMISSAL WITH PREJUDICE** shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 22nd day of September 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
